**HAYSLIP et al. v. TEXTAG CO., Inc. et al.**
Civ. No. 3825.

United States District Court
N. D. Georgia, Atlanta Division.
May 24, 1951.

See also, D.C., 94 F.Supp. 425.

Herbert Johnson, Henry M. Hatcher, Jr., Grace W. Thomas, Alton T. Milan, Atlanta, Ga., for plaintiffs.

G. Eugene Ivey, Ed Dorsey, Atlanta, Ga., for defendants.

HOOPER, Chief Judge.

An interlocutory decree having been entered in the above case on the 3rd day of August 1950 finding the complainants entitled to a permanent injunction for infringement upon their patent, the Court, on the 16th day of August 1950, issued its order appointing a special master to take and state an account of the profits to which the complainants were entitled under the decree.

On the 9th day of November 1950 the master filed his report with the Court finding that during the accounting period from March 16, 1950 to August 3, 1950, the defendant The Textag Company had suffered an operating loss of $5,374.27.

The complainants duly objected and excepted to the master's report, among other grounds, upon the grounds that the report of the master did not purport to be a finding of the profits to which the complainants were entitled, but was a mere audit of the book transactions of the company during the accounting period and that no hearings had been held by the master at which the complainants could introduce evidence and challenge the allowance of expenses, credits and deductions shown therein. Upon these objections and exceptions the Court on the 2nd day of January, 1951 recommitted the report to the master with instructions to conduct a hearing and return findings of fact and conclusions of law to the Court.

On the 5th day of February 1951 the master re-filed his report with the Court with his finding that The Textag Company had sustained a $5,317.42 operating loss during the accounting period.

To this report of the master on the 5th day of February 1951 the complainants filed exceptions to the allowance of several deductions in the master's report. These exceptions will be taken up in the order they were argued.

I.

The net sales of $24,033.18 reported by the master were excepted to on the grounds that the net sales were arrived at by a deduction from the gross sales during the accounting period of certain listed credit invoices totaling $6,750.39. These credits were excepted to on the ground that they were credits for merchandise sold during a period prior to the accounting

period and upon which no profits were allowed, and did not purport to be credits upon merchandise sold and returned during the accounting period. The credits were further excepted to on the ground that there was no evidence to support their allowance.

Whereupon the Court re-referred the case to the master with instructions to make a supplementary report setting forth sales made prior to the accounting period and returned during the accounting period, returned sales for replacements, sales during the accounting period returned during the accounting period and the practice of the defendants in operation of the business of accepting returned merchandise prior to, during and subsequent to the accounting period.

To the supplemental report of the master the complainants renewed their exceptions and further excepted to the supplemental report on the ground that the supplemental report of the master was made without the complainants being given an opportunity to present evidence and to be heard upon the matters found by the master in this supplemental report. The complainants further excepted on the ground that the supplemental report showed a deduction from the total sales of the amount of $2,190.39 which was not listed as returned sales and was not otherwise explained.

Upon the report of the master the Court finds that The Textag Company was a continuing business which had for several months prior to the accounting period operated exclusively in the manufacture, sale and distribution of products covered by the patent of complainants. Due to the continuous nature of the business, transactions begun before the accounting period extended over into the accounting period and the sales during the accounting period were not isolated but were a part of this continuous transaction of business. Prior to and during the accounting period the company willingly and unquestioningly accepted returned merchandise in order to maintain the goodwill of jobbers who made the sales directly to the ultimate consumers. While The Textag Company ceased to operate at the conclusion of the accounting period, the business was continued by defendant Ross M. Goddard, Sr., who has been held accountable in this action, and he continued to accept willingly merchandise offered for return.

Due to the nature of the corporate defendant as a continuing business and the practice of the defendants prior to the accounting period, during the accounting period and after the accounting period, while operating as an individual enterprise, in freely and willingly accepting returns of merchandise, the Court finds it unnecessary to make any finding upon the possibility of determining whether or not the credits for returned merchandise excepted to were for merchandise sold prior to the accounting period or during the accounting period. The Court finds that due to the nature of the business, the credits for merchandise returned during the accounting period were properly allowed regardless of whether the merchandise was sold prior to the accounting period or during the accounting period.

II.

In computing the cost of sales reported in his audit, the master added to the cost of material 25% thereof as an allowance for spoilage in the manufacturing process. This allowance was based upon affidavits of defendants and their employees. There were affidavits of other employees and of prior managers of the business stating that any loss due to spoilage was nil or negligible. Upon the conflicting evidence the Court finds that there was evidence to support the allowance of the master and that this allowance was reasonable and proper.

III.

In his audit the master allowed a deduction of $3,030, for amounts withdrawn from the business by defendant Ross M. Goddard, Sr. as salary.

In its decree and findings of August 3, 1950 the Court found that, "The Textag Company is an alter ego of Ross M. Goddard, Sr., being organized, owned and controlled solely by him, and Ross M. Goddard, Sr. is personnally liable jointly with The

Textag Company for infringement of complainants' patent and trademark rights."

In its decree the Court provided, " * * * that the complainants recover from defendants The Textag Company and Ross M. Goddard, Sr. all profits which either or both may have received or be entitled to from the use, manufacture or sale of articles covered by complainants' patent and from the use of complainants'' trademark 'Textag' from March 16, 1950 to the effective date of this decree."

In view of the finding of the Court that The Textag Company was a mere alter ego of defendant Ross M. Goddard, Sr. and in view of the fact that the Court decreed that Ross M. Goddard, Sr. was jointly liable with The Textag Company and that complainants should recover from him all profits realized by him from the infringement, the amounts paid by The Textag Company to Ross M. Goddard, Sr. were improperly allowed by the master as a deduction and should be added to the profits of the accounting period.

### IV.

In his audit the master allowed a deduction of $3,262.99 for legal expenses. It was stipulated between counsel that these legal expenses were incurred in this action or in an application by defendant Ross M. Goddard, Sr. for patents upon improvements in a laundry identification system. The amount of $2,000 was for attorney's fees incurred in this action. The system upon which the patent applications were based has been found to be an infringement upon the patent of the complainants in this action.

It is the conclusion of the Court that the legal expenses incurred by the defendants in this action and the legal expenses incurred by the defendants in patent applications were improperly allowed.

### V.

On the 16th day of August 1949, Cleaners Control Systems, Inc., the predecessor company of The Textag Company, while under the management and control of defendant Ross M. Goddard, Sr., entered into a lease arrangement with The Textag Company whereby Cleaners Control Systems, Inc. leased to The Textag Company its franchise of April 3rd and 4th, 1946, to manufacture laundry identification systems under the patent of the complainants. Under this agreement The Textag Company was to pay to Cleaners Control Systems, Inc. a lease of $\frac{1}{4}\cancel{c}$ per laundry indentification tag sold and on that date deposited in the bank account of Cleaners Control Systems, Inc. the sum of $500 as an escrow to guarantee lease payments.

The master has found that on the 16th day of March 1950 The Textag Company was indebted to Cleaners Control Systems, Inc. in the amount of $274.55 upon this lease arrangement. He has further found that none of the $500 escrow is recoverable by The Textag Company from Cleaners Control Systems, Inc. and has allowed as a deduction the full amount of $500 escrow written off during the accounting period.

The complainants have introduced in evidence a judgment of the Fulton Superior Court of Georgia in favor of Cleaners Control Systems, Inc. against Ross M. Goddard, Sr. et al. in which it was found that The Textag Company was fraudulently organized by Ross M. Goddard, Sr. in breach of his fiduciary duties as a director of Cleaners Control Systems, Inc., that all contracts, sales and transfers between the two corporations were voidable at the election of Cleaners Control Systems, Inc., that all capital of The Textag Company came from Cleaners Control Systems, Inc. and that defendants contributed nothing to the capital of The Textag Company. Upon this finding of the Fulton Superior Court against defendant Ross M. Goddard, Sr., the Court entered judgment that Cleaners Control Systems, Inc. recover from Ross M. Goddard, Sr. and The Textag Company all of the properties, moneys and other assets of The Textag Company.

Upon the findings of the master and the judgment of the Fulton Superior Court, it is the conclusion of this Court that the amount of $274.55 was improperly allowed as a deduction and that the profits of The Textag Company should be increased by this amount.

### VI.

█ The complainants have excepted to the allowance of amounts paid for advertising published in a trade journal for the months of July and August 1950. The Court finds that the defendants have been allowed an expense of $196.25 for advertising appearing in the July issue and the sum of $198.37 for advertising appearing in the August issue. The evidence is in conflict as to whether the periodical appears on the 25th day of the month prior to its date or the 1st day of the month of its date. The Court finds that all advertising which appeared prior to the date of August 3, 1950 was properly allowed.

### VII.

█ It was stipulated between counsel that the deduction of $116.98 allowed by the master as moving expense was an expense incurred during the accounting period for moving of the business of The Textag Company from one floor of the building in which it was located to another floor. It was further stipulated that the sum of $110.50 was paid to Painter Electric Supply Company for services in moving the electric wiring of the company in connection with the move of the quarters of the company from one floor to another. The allowance as an expense of these items incurred in moving the premises of the company was excepted to on the ground that these expenses did not contribute to sales during the accounting period and were improperly allowed.

It is the conclusion of the Court that since the company was engaged solely in the business found to be an infringement and since these expenses were incurred during the accounting period, they were properly allowed.

### VIII.

█ It is further stipulated between counsel that the sum of $270 was paid by The Textag Company for printed material bearing the trademark "Textag." The printed material was rendered useless by the injunction of this Court enjoining use of the trademark "Textag", and the printed material was subsequently destroyed.

The Court finds that since this expense was incurred during the accounting period, it was properly allowed as a deduction.

### IX.

Upon the findings and reports of the master and the exceptions thereto, it is the finding of the Court that The Textag Company, during the accounting period from March 16, 1950 to August 3, 1950, realized a profit of $1,250.12.

### X.

The Court has previously found in its findings of August 3, 1950 that the complainants repurchased their patent on January 25, 1950 at which time the defendants were operating thereunder on a temporary license agreement specifying a royalty of 1¢ per tag sold by the defendants and that on March 16, 1950 the complainants notified the defendants to cease operations under the patent. Subsequent to this notice the defendants, on the 4th day of April 1950, tendered to the complainants royalties in the amount of $276.48 for the period from January 25, to February 28, 1950. On the 26th day of April 1950 the defendants tendered to the complainants the sum of $589.85 for the period from March 1 to March 31, 1950. On the 25th and 26th days of May 1950 the defendants tendered to the complainants the sum of $846.85 for the period from April 1 through April 30, 1950. On the 13th day of July 1950 the defendants tendered to the complainants the sum of $400.03 for the period from May 1 to May 31, 1950. As each of the tenders to the complainants was made, the complainants, with permission of the Court, tendered into Court these amounts. In its final decree the Court decreed that these sums in checks totaling $2,113.21 were awarded to the complainants, but that the defendants were to be allowed a credit upon profits found in favor of the complainants in the amount of these checks.

The Court finds that of these tendered royalties, $722.28 was tendered as royalties for a period prior to March 16th, and that the sum of $1,390.93 was for royalties for periods within the accounting period.

On the 12th day of August 1950, within the time allowed by law, the complainants filed their motion with the Court to amend its decree of August 3, 1950 so as to allow a credit upon profits found in favor of the complainants of only such sums as were tendered as royalties for periods included within the accounting period. This action has been pending before the master and the Court continuously since this motion to amend the decree and has not been heard or passed upon by the Court. There is no laches in bringing this motion before the Court in this hearing.

It is clear to this Court that Judge Neil Andrews, then presiding, in passing his order of August 3, 1950, had in mind applying against profits allowed after March 16, 1950 only amounts tendered as royalties by the defendants which pertained to the accounting period in this case, and that it was not the intention of Judge Andrews to take from the complainants the sum of $722.28 tendered prior to the accounting period and apply it against profits earned after March 16, 1950. Such a credit would have been a very unwarranted deduction from the profits decreed in favor of the complainants.

Since the complainants have paid all sums tendered by the defendants as royalties into Court and have elected after March 16, 1950 to hold the defendants to profits earned, the amount of $1,390.93 tendered by the defendants for the accounting period should be allowed as a credit upon profits earned.

### XI.

The Court having found that the complainants are entitled to recover the sum of $1,250.12 and that the defendants are entitled to a credit against these profits in the amount of $1,390.93, the credits to which the defendants are entitled exceed the award against them by $140.81. Upon this finding the Court concludes that the defendants should recover from the complainants the amount of $140.81.

### XII.

In its order of August 16, 1950 appointing a master in this case to determine the profits to which complainants are entitled, the Court ordered that the compensation of the master be taxed as costs in this action to be paid by the defendants. No exception was taken to this order.

The Court finds that the complainants have not been unduly litigious, that their exceptions have not been frivolous, and that they have not unduly delayed the proceedings before the master. In view of the prior order of the Court, the Court finds no basis to assess any fees of the master against the complainants and further finds that the fees of the master should be taxed against the defendants.